### *EX PARTE* HARDIN,

#### *IN RE* McLURE v. MELTON.

A sold a lot of land, upon which rested the lien of a judgment, to B, taking several notes and a mortgage. At the maturity of the last note it was cancelled and the mortgage marked satisfied, B giving to A a written, unsealed agreement to pay this judgment as a part of the unpaid purchase money. B, in consideration of love and affection, conveyed to trustees for the benefit of his wife and children with general warranty. The trustees, under proper authority, conveyed to C for value, without warranty, he having at least constructive notice of the judgment, who conveyed with warranty to D. The lot being levied upon and about to be sold, C paid the judgment, and thereupon intervened by petition in a cause then pending for the settlement of B's estate, B being dead, and sought therein to recover the amount paid by him in exoneration of his warranty to D. *Held,*

1. JUDGMENTS—WARRANTY—SUBROGATION.—That the payment by C of the judgment was not to relieve A, but to perform C's covenant of warranty. and therefore he has no equity to be subrogated to the rights of A or of the holder of the judgment; and in no event could this judgment, which was not against B personally, be set up as a judgment claim against the general assets of B's estate.

2. MORTGAGES—ADMINISTRATION—EQUITIES.—That the mortgage could not be set up as such except against the property mortgaged, but only as of the rank of the sealed notes which it secured. And having been extinguished by the agreement, nothing remained except perhaps an equity in A to have the lot of land sold to pay the debt, with which equity C had no connection.

3. WARRANTY—DAMAGES.—C had no rights under the warranty in the deed of A to B, nor could he recover any money under the warranty in the deed of B to the trustees, as the measure of damages for breach of warranty in such cases is the purchase money with interest, and this deed was voluntary.

4. SUBROGATION—ADMINISTRATION.—The agreement between B and A was for A's benefit, and C has no connection with it, and no rights thereunder, and if he had, it would rank only as a simple contract obligation in the administration of B's estate.

5. QUITCLAIM DEED—WARRANTY.—In this matter, C occupies the position of one who purchased under a quitclaim deed with an outstanding encumbrance, and then conveyed with warranty ; the encumbrance being enforced, he must make good his warranty without any recourse against his vendors.

6. LIMITATION OF ACTIONS.—A simple contract obligation made in 1871 is barred by the statute of limitations in six years, under the provision of the Code of Procedure of 1870.

7. IBID.—INJUNCTION.—An order calling in creditors to a suit for settlement of an estate and enjoining suits at law, does not prevent the currency of the statute of limitations against claims which should have been presented in that case as claims against the estate.

Before WALLACE, J., Chester, June, 1890.

The case is fully stated in both Circuit decree and opinion. The Circuit decree was as follows :

The cause entitled J. J. McLure, administrator of M. A. Melton, and others, was instituted by the administrator of George W. Melton, to facilitate the settlement of the estate of G. W. Melton, which was insolvent. Creditors of the estate were enjoined from proceeding against it save through that action, and were required to establish their demands in it. W. Holmes Harden claims to be a creditor of the estate, and seeks by this petition to be allowed to establish his demand. The facts upon which petitioner supports his demand are as follows :

On the 25th of November, 1867, C. D. Melton sold and conveyed to G. W. Melton a dwelling house and land adjacent for a large sum of money. Notes were executed by G. W. Melton to C. D. Melton for the purchase price, and these notes secured by a mortgage of the premises. When the note which had the longest time to run matured, C. D. and G. W. Melton had a settlement on 25th November, 1871. It was agreed that G. W. Melton should assume the payment of several judgments which had been obtained against C. D. Melton prior to the conveyance of the house and land to G. W. Melton, and which were liens upon the property, and which in the aggregate were about equal

in amount to the aggregate sum due upon G. W. Melton's notes. Upon this understanding the notes and mortgage of G. W. Melton were cancelled and given up to him. G. W. Melton, in pursuance of this agreement, paid all the judgments which were liens upon the land, save one known as the Wright judgment. That judgment, at the time the others were paid, was in litigation, its validity as a lien being in controversy. Its validity as a lien was finally established. It was obtained 15th Nov., 1867.

In the meantime the house and land had been conveyed by G. W. Melton to trustees, with warranty, in trust for his wife and children. G. W. Melton died insolvent, and had not paid the Wright judgment. The trustees who had the title to the property, asked and obtained leave of the court to sell it, with a view of making a more advantageous investment for the *cestui que trusts*. At the sale thus ordered, the petitioner here, W. Holmes Harden, became the purchaser for the sum of $5,00'). In a little more than a year after his purchase he sold to another for the sum of $6,000. All this while the Wright judgment was in litigation, and, as before said, its validity and as a lien upon this house and land was finally established. All the time of these transfers this judgment had been of record in the register's office of Chester County, and upon the final determination of the contest as to it, W. Holmes Harden's vendee, James C. Harden (who had it under a warranty deed from W. Holmes Harden), was in possession. After further litigation, which need not be set out here, the Wright judgment was levied upon the house and land. W. Holmes Harden was informed by his vendee that he rested upon his warranty, and because there was no further ground of resistance, W. Holmes Harden paid to the sheriff of Chester County the amount, principal, interest, and costs, of the Wright judgment, and thus made good his warranty to James C. Harden. W. Holmes Harden claims, upon this state of facts, that he is a creditor of the estate of G. W. Melton, and that he should be allowed to set up both the mortgage of G. W. Melton to C. D. Melton and the Wright judgment which he has paid.

The force of the mortgage of G. W. Melton to C. D. Melton related only to the house and land upon which it was a lien. To restore to it now all the force it ever had, would not aid petition-

er in the collection of a claim against G. W. Melton's estate, for it would not constitute a lien upon any property of that estate. The same may be said of the Wright judgment. That was a judgment against C. D. Melton, obtained in a proceeding to which G. W. Melton was not a party. The doctrine of subrogation cannot impart new and enlarged scope to instruments, but only prevent extinguishment in support of an equity. It is the relegation to another's right, nor is the right enlarged by the transfer. If, therefore, the mortgage and judgment were both restored to their original vigor, they could have no relation to the estate of G. W. Melton.

G. W. Melton promised to pay the Wright judgment, and reserved money due C. D. Melton with which to do so. This promise did not make him liable on the judgment. The ground of his liability was his promise. This promise was made in November, 1871, and, of course, has been long since barred by the statute of limitations.

It is therefore ordered, that the prayer of the petitioner be denied.

W. Holmes Harden appealed on the following grounds:

1st. Because his honor erred in holding that the petitioner had no right to prove the amount paid by him in satisfaction of the Wright judgment against the estate of George W. Melton, when the petitioner was the assignee of the covenant of warranty of George W. Melton against encumbrances and for quiet enjoyment, and said covenant was broken by the levy of the execution issued on said judgment on the Chester property, and the payment of the same by the petitioner, and he was entitled to prove the same according to the rank of his said debt under the statute.

2nd. Because the case of J. J. McLure, administrator, *v.* M. A. Melton and others, being still before the referee, the fund still in court arising from the sale of the real estate of the intestate, the administrator not having accounted for his administration, and there being a large sum of money in his hands undistributed, it was error in his honor not to allow the petitioner to prove in this action the breach of the covenant of warranty of George W.

Melton, of which the petitioner was the assignee, and his payment of the Wright judgment as a debt against the estate of the said G. W. Melton.

3rd. Because his honor erred in not holding that when W. Holmes Harden paid the Wright judgment, he was entitled to be subrogated to all the rights which the estate of C. D. Melton had in the agreement between C. D. and G. W. Melton of November 25th, 1871, and through that instrument to prove it as a judgment debt against the estate of George W. Melton.

4th. Because when W. Holmes Harden paid the Wright judgment, he paid the unpaid part of the purchase money of the Chester real estate on which C. D. Melton held a mortgage of G. W. Melton, and Harden is entitled to be subrogated to all the rights of the former in said mortgage, and has a right to have it kept alive for his benefit, so that he may prove it against the estate of George W. Melton as a mortgage debt, and his honor erred in not so finding.

5th. That his honor erred in holding that the petitioner's claim was in any sense barred by the statute of limitations.

*Mr. S. P. Hamilton*, for appellant.

*Messrs. Giles J. Patterson* and *G. W. S. Hart*, contra.

September 14, 1891. The opinion of the court was delivered by

Mr. Justice McIver. The principal case in which the petition of appellant has been filed, was an action brought by the plaintiff, as administrator of George W. Melton, deceased, against his heirs and creditors to marshal the assets of the estate of said George W. Melton, which is insolvent, and it was commenced on the 17th of July, 1877. On the 24th of August, 1877, an order was passed in said case enjoining all creditors of George W. Melton "from suing on said claims or prosecuting their actions at law thereon against said administrator until the further order of this court." On the 13th of October, 1877, another order was passed whereby, amongst other things, all creditors were required to prove their demands before the clerk, on or before the 15th of

January, 1878, and on the 14th of November, 1881, A. G. Brice was substituted as referee in place of the clerk, who, after holding several references, made his report on the 1st of February, 1884, ascertaining the debts proved and classifying them according to their legal priorities. To this report some of the creditors filed exceptions to the classification adopted by the referee, and his report with the exceptions thereto came before his honor, Judge Wallace, who, on the 20th of May, 1885, rendered judgment sustaining the exceptions, but in all other respects confirming the report of the referee. From that judgment some of the mortgage creditors appealed, and on the 22nd of April, 1886, the Supreme Court rendered judgment affirming the judgment of Judge Wallace.[1] The case was then carried by writ of error to the Supreme Court of the United States, where the writ of error was dismissed,[2] and the mandate from that court, together with the *remittitur* from the Supreme Court of this State, was filed in the Circuit Court on the 4th of June, 1890.

In the meantime the real estate of the said George W. Melton had been sold, and a considerable portion of the proceeds of such sale remain in the hands of the clerk; and it is conceded that there are assets yet in the hands of the administrator, who has not yet formally accounted. On the 25th of June, 1890, the appellant filed his petition in the cause, praying for leave to come in and prove his alleged claim against the estate of George W. Melton. His claim is based upon the following allegations contained in his petition : that Mrs. Wright, on the 15th of November, 1867, recovered a judgment against C. D. Melton, which became a lien on certain real estate in and adjoining the town of Chester ; that on the 25th of November, 1867, C. D. Melton conveyed said real estate to his brother, George W. Melton, with general warranty, and received from his brother four notes under seal, bearing that date, and secured by a mortgage of the premises; that when the last of these notes became payable, to wit, on the 25th of November, 1871, an agreement in writing, not under seal, was entered into by the Melton brothers, whereby George W. Melton assumed the payment of certain specified judgments, including that in favor of Mrs. Wright, which had been previously obtained

---

[1] 24 S. C., 559.    [2] 133 U. S., 380.

against C. D. Melton, and were liens upon said real estate, and thereupon the said C. D. Melton cancelled and surrendered the said four notes, together with the mortgage to secure the payment of the same, to the said George W. Melton, but the record of said mortgage still remains uncancelled; that thereafter, to wit, in August, 1875, the said George W. Melton conveyed the said real estate, with the usual covenants of warranty, to certain trustees for the benefit of his wife and children; that in January, 1880, the said trustees, being duly authorized so to do, sold and conveyed the said real estate to the appellant, who bought in entire ignorance of the agreement above mentioned between the Melton brothers; that in April, 1881, the said appellant sold and conveyed the said real estate to James C. Hardin, with the usual covenants of warranty; that on the 13th of July, 1886, the Wright judgment, which had not been paid by George W. Melton in his life-time, or by any one since his death, was levied upon the real estate in the possession of James C. Hardin, and the appellant, in exoneration of his covenant of warranty, having no defence to an action thereon, paid up the Wright judgment; wherefore the appellant claims that by the payment of said judgment he became the assignee of the covenant of warranty in the deed of George W. Melton to the said trustees; and that having been compelled to pay the Wright judgment, which George W. Melton had undertaken to pay by his agreement of the 25th of November, 1871, the appellant stands as a surety to George W. Melton's estate, "and is entitled to set up said judgment in equity in his own favor in the marshalling of the assets of the estate of the intestate." Again, appellant claims that, by the payment of the Wright judgment, he in effect paid the balance of the purchase money due by George W. Melton for the said real estate over which C. D. Melton held a mortgage, and appellant "is entitled to have the benefit of said mortgage as against the estate of George W. Melton, and to have leave to set it up as a mortgage debt against his estate, and to be subrogated to all the rights of the estate of C. D. Melton in said mortgage."

To this petition the creditors of George W. Melton, who have heretofore established their claims, filed an answer, admitting all of the allegations of the petition, except the following, which

they deny : that appellant has become a creditor of the estate of
George W. Melton ; that appellant bought the real estate "in
entire ignorance of the agreement" set forth in the petition ; that
petitioner had no defence to an action on the covenant of war-
ranty contained in his deed to James C. Hardin; and that ap-
pellant, by the payment of the Wright judgment, became an as
signee of the covenant of warranty in the deed from George W.
Melton to the trustees. They also plead the statute of limitations.

It is conceded that the deed from George W. Melton to the
trustees was a voluntary deed, based upon the consideration of
natural love and affection only ; and we presume that the deed
from the trustees to the appellant contained no warranty. The
testimony adduced on the part of the appellant was that of Maj.
Hamilton, who stated that he was the attorney of George W.
Melton, and as such drew the deed to the trustees, as well as the
proceedings under which the trustees obtained leave to sell, and
conducted the sale made by them to appellant, and that at that
time the Wright judgment was supposed by all parties to be no
judgment and no lien upon the property sold, and that the agree-
ment between the Melton brothers, of the 25th of November,
1871, was not known to witness or any one engaged in the case
until it was produced in evidence by W. A. Clark in 1884. G.
W. S. Hart, Esq., a witness examined for respondents, testified
that he with his partner were the attorneys of Mrs. Wright, and
they first learned that George W. Melton had assumed the pay-
ment of the Wright judgment some time in the latter part of
1881 or early part of 1882—prior to July, 1882 ; but the appel-
lant, it is admitted, had no personal knowledge of such assump-
tion at the time he purchased. It appears from the statements
made in the case that C. D. Melton died in December, 1875, and
George W. Melton in July, 1876, both being insolvent.

The case was heard by his honor, Judge Wallace, who rendered
judgment dismissing the petition, and from his judgment the
petitioner appeals upon the several grounds set out in the record.
Inasmuch as the decree of the Circuit Judge, together with appel-
lant's exceptions thereto, should be incorporated in the report of
the case, it is unnecessary for us to state them particularly here.

The fundamental inquiry in the case is, whether the appellant

has any such claim against the estate of George W. Melton as entitled him to the aid of the court in enforcing it. Whatever claim he may have is unquestionably based upon the fact that he has paid the Wright judgment, the payment of which was assumed by George W. Melton by the agreement of 25th of November, 1871; but as such payment was not made for the purpose of relieving the estate of C. D. Melton, but solely for the purpose of relieving the property from the lien of said judgment, which the appellant had bought with notice of the judgment, and conveyed with warranty to another, in order to perform his covenant of warranty, it is difficult for us to understand what equity he has to be subrogated to the rights which the holder of that judgment, or to the rights which C. D. Melton's estate, may have had against the estate of George W. Melton. There was no privity whatsoever between the appellant and C. D. Melton. He was not a surety of C. D. Melton, and in no way bound to pay said judgment for him. Indeed, practically he paid no debt for which the estate of C. D. Melton was in equity and good conscience liable; for though such estate was *legally* liable to pay such judgment, yet in equity and good conscience it was really payable out of the property which the appellant saw fit to buy with notice that it was subject to such lien. But in addition to this, as the Circuit Judge well says, the judgment was against C. D. Melton and not against George W. Melton, who was never liable to pay the amount thereof *as a judgment*, but only liable by reason of his agreement of 25th of November, 1871, which was a mere simple contract obligation, and hence we do not see how it is possible, under any view of the case, for the Wright judgment to be set up *as a judgment* against the estate of George W. Melton.

As to appellant's claim to set up the mortgage originally given by George W. Melton to C. D. Melton to secure the payment of the purchase money of the Chester property, the same remark as that just made in reference to the Wright judgment may be made. That mortgage never was a lien on anything but the Chester property, and did not cover any other portion of the property belonging to the estate of George W. Melton, and hence it could not be proved *as a mortgage debt*

against the estate of George W. Melton, under the principle decided in *McLure* v. *Melton* (24 S. C., 559); but if set up at all, it must take the same rank as the debt which it was given to secure, to wit, that of a sealed note. It is necessary, therefore, to inquire whether the appellant can set up the sealed notes as a claim of that rank against the estate of George W. Melton. These notes were extinguished by the arrangement between the Melton brothers of the 25th of November, 1871, when they were cancelled and surrendered to George W. Melton, and they cannot now constitute any legal cause of action against the estate of George W. Melton, and whatever equities C. D. Melton or his estate may have had, as intimated in the case of *Hardin* v. *Clark* (32 S. C., at pages 485–6), the appellant has no connection with so far as we can see.

He cannot claim as assignee of the covenant of warranty contained in the deed from C. D. Melton to George W. Melton, as was held in the case just cited, and we do not see what claim he could have against the estate of George W. Melton as assignee of the covenant of warranty contained in the deed from George W. Melton to the trustees; for that being a voluntary deed, and the measure of damages for breach of a covenant of warranty being fixed by statute at the amount of the purchase money paid, with interest from the time of the alienation, where there was nothing paid, nothing could have been recovered. If the trustees had been evicted, they certainly could have recovered nothing from the estate of George W. Melton for the breach of the covenant of warranty contained in the voluntary deed under which they held; and the appellant, as their assignee, could have no higher rights than his assignors.

If, therefore, the appellant has any claim at all upon the estate of George W. Melton, it must arise from the agreement of 25th of November, 1871, whereby George W. Melton assumed the payment of the Wright judgment. But how can the appellant connect himself with that agreement? That was made for the benefit of C. D. Melton, and possibly might have enured to the benefit of the holder of the Wright judgment, but appellant is neither the assignee of C. D. Melton nor of the holder of the Wright judgment. It seems to us that the true

position of the appellant is that of a purchaser of real estate under a quit claim deed, without warranty, upon which there rested the lien of a judgment of which he had not only constructive notice unquestionably, arising from the record, which would have been sufficient; but also, as it would seem, actual notice (if we are at liberty to refer to the decision in *Hardin* v. *Clark*, 32 S. C., 485, *supra*, offered in evidence in this case), at the time he purchased, and has seen fit to remove such lien by payment in order to protect himself against an action for breach of his covenant of warranty in his deed to his vendee. If this be so, then it is plain that he has no cause of action against the estate of George W. Melton ; for if so, then in every case where a person who sells real estate, covered by a judgment or other lien, of which his vendee has notice, and conveys the same without warranty, the vendor would be liable for any amount which the vendee might be called upon to pay for the purpose of removing such lien ; and this could hardly be pretended, as it would destroy all distinctions between a quit-claim deed and a warranty deed. The fact that the vendor may have assumed the payment of such lien by a contract with a third person, with whom the vendee has not been able to connect himself, cannot alter the case, as such third person might at any time he saw fit release the vendor from the performance of such contract. But even if appellant could connect himself with the agreement of 25th of November, 1871, that would create a simple contract obligation, which could not be enforced by action after the lapse of six years—not four, as contended by one of the counsel for respondents, as the change in the statutory period was effected by the Code which was adopted 1st March, 1870, and not by the Revised Statutes of 1872. So that it is clear that C. D. Melton or his administrator would have been barred of their action on such promise long before the petition in this case was filed, unless protected by the order of injunction, and the appellant, who certainly could not claim any higher rights, would be in like condition.

We must consider, then, the effect of the order of injunction which was granted before the expiration of the six years. It will be observed that this order only restrained creditors from

7 prosecuting their actions *at law*, and did not prevent them from coming in and proving their demands in the case in which the order of injunction was granted. On the contrary, they were called upon to do so by a time fixed for that purpose—15th of January, 1878. But the appellant not only failed to come in within six years from that date and present his demand, but he failed to do so within six years from the filing of the report on claims—1st February, 1884. So that even if appellant ever had any claim against the estate of George W. Melton, growing out of his promise to C. D. Melton to pay the Wright judgment, it was barred by the statute before he filed his petition or presented his claim, which, according to what was held in *Warren* v. *Raymond* (17 S. C., at pages 203-4), must be regarded as the time when he commenced his action. The fact that the appellant filed his petition, commenced his action, within six years after he paid the judgment cannot affect the question ; for without considering the question whether *he* could have brought his action before making such payment, it is sufficient to say that he can claim no higher rights than C. D. Melton, and certainly he and his administrator were barred long before the appellant instituted this proceeding.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.