## STATE v. JAQUES.

1. FRAUD.—General principles applicable to allegations of fraud stated.

2. CRIMINAL LAW—OFFICIAL MISCONDUCT—SUPERVISOR.—Allegations that a supervisor did not cause contracts for repairs on bridges to be let to the lowest bidder, does not state acts of official misconduct.

3. IBID.—IBID.—IBID.—Allegations that contracts for repairs of bridges for more than $10 were let and received by a supervisor without the presence of a member of the board of commissioners, state acts of official misconduct.

4. IBID.—IBID.—IBID.—Allegations that a supervisor took part in approv-
ing claims for work that was not performed, and for material that
was not furnished, when he knew or should have known such facts,
state acts of official misconduct.

Before KLUGH, J., Colleton, March, 1902.   Reversed.

Indictment against John O. Jaques.   From order quash-
ing indictment, State appeals.

*Assistant Attorney General Townsend* and *Solicitor
Davis,* for appellant, cite: 24 S. C., 593; 52 S. C., 525.

*Messrs. Howell & Gruber,* contra, cite: 17 S. C., 57; 19
Ency., 506; Civil Code, 1354, 1386; Acts 1900, p. 280; 5 S.
C., 124; 16 Ency., 385, and notes; 61 S. C., 186; 3 McC.,
533.

February 9, 1903.   The opinion of the Court was deliv-
ered by

Mr. JUSTICE GARY.   This is an appeal from an order
quashing the indictment, on the ground that it did not allege
facts sufficient to constitute a violation of law.   The follow-
ing is a copy of the indictment: "At a Court of General Ses-
sions, begun and holden in and for the county of Colleton, in
the State of South Carolina, at Walterboro Court House, in
the said county and said State aforesaid, on the fourth Mon-
day of March, in the year of our Lord one thousand nine hun-
dred and two, the jurors of and for the county aforesaid, in
the State aforesaid, upon their oath present: That John O.
Jaques, late of the county and State aforesaid, on the 7th
day of August, in the year of our Lord one thousand nine
hundred, and on divers other days, both before and up to the
finding of this inquisition, with force and arms, at Walter-
boro, in the county and State aforesaid, committed the crime
of official misconduct, in this: The said John O. Jaques, who
was and is now the duly qualified supervisor of Colleton
County, and as such was a member of the board of county

commissioners for the county aforesaid, and whose duties and authority as such supervisor of said county was limited to a single election district, to wit: the county of Colleton; said John O. Jaques, having assumed the duties of county supervisor for said county as aforesaid, and as a member of the board of county commissioners for said county, did then and there falsely, fraudulently, corruptly and unlawfully examine, approve and order to be paid divers false and fraudulent claims against the county of Colleton aforesaid, which said false, fraudulent and unlawful claims were then and there for examination and approval before the said board of county commissioners for said county, consisting of him, the said John O. Jaques, W. W. Jones and Jasper M. Smith; they, the county board of commissioners aforesaid, did then and there approve and order to be paid claims, that is to say, a claim No. 639, in favor of P. M. Morris, for repairs on bridges near Cohen's Corner, in said county, approved by said board for $24.25. And another claim, No. 586, in favor of T. E. McTeer, for repairs on Pine Road bridges, in said county, approved by the said board on the 7th day of August, in the year aforesaid, for $40. And another claim, No. 1, in favor of C. P. McTeer, for repairs on bridges on White Hall and Combahee Ferry road, in said county, approved by said board on January 19th, 1900, for $21. And another claim, No. 9, in favor of R. A. McTeer, for repairs on bridges on Combahee and White Hall Ferry road, in said county, approved by said board on January the 19th, in the year of our Lord nineteen hundred, for $33. He, the said John O. Jaques, well knowing the said claims to be false, fraudulent and unlawful, the said contract for which said claims were made against the county of Colleton not having been let to the lowest responsible bidder, nor inspected and received as required by law, with intent to cheat and defraud the county of Colleton, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid. And the jurors aforesaid, upon their oath aforesaid, do further present: That John O.

Jaques, county supervisor for the county of Colleton, and as such supervisor a member of the board of county commissioners for the said county of Colleton, in the State of South Carolina, on the 19th day of January, in the year of our Lord nineteen hundred, and on divers other days both before and up to the taking of this inquisition, with force and arms, at Walterboro, in the county of Colleton and State of South Carolina, was guilty of wilful, official and habitual negligence, in this: that he, the said John O. Jaques, county supervisor and member of the board of county commissioners for the county of Colleton, as aforesaid, and whose duty was then limited to a single election district for said county, along with other members of the county board of commissioners as provided by law for said county, did then and there approve certain false, fraudulent and unlawful claims against the county of Colleton, in the State aforesaid, said claims having not been let out to the lowest responsible bidder, and in excess of $10, nor was the work for said claim drawn and approved by said board of commissioners aforesaid, inspected nor received as required by law; that is to say, a claim against said county of Colleton in favor of G. A. Blocker, No. 692, for building bridge 'Newton's,' approved 7th September, 1900, for $10, and paid; whereas, no such work was ever performed by said claimant, and so known or should have been known to the said John O. Jaques, county supervisor, as aforesaid.    And another claim against the said county, of Ashley Baggott, No. 7, for repairing a bridge on Piney Grove and Saltkehatchie road, the items being 2,000 feet of lumber, hauling and work, approved by said board of county commissioners as aforesaid, for $65, on the 19th day of January, 1900, and paid.

Another claim against the said county, No. 634, in favor of G. A. Blocker, for furnishing lumber for said county, approved by said county board of commissioners, consisting of the aforesaid J. O. Jaques, county supervisor, and W. M. Jones and Jasper M. Smith, as members of the board of county commissioners as aforesaid, and paid for $25;

whereas, in truth and in fact, no lumber was furnished by said claimant.; all of which facts were well known to the said John O. Jaques, county supervisor as aforesaid, and the said board of county commissioners, with intent to cheat and defraud the county of Colleton, against the form of the statute in such case made and provided, and against the peace and dignity of the same State aforesaid."

The State appealed from the order quashing the indictment on the following grounds:

"1. Because the indictment in the first count alleges: 'That the defendant, as a member of the board of county commissioners for said county, did then and there falsely, fraududulently, corruptly and unlawfully examine, approve and order to be paid divers false, fraudulent and unlawful claims,' and did then and there approve and order the same paid, that is to say: claim No. 639, in favor of P. M. Morris, for repairs on bridges near Cohen's Corner, in said county, for $24.25, and another claim, No. 536, in favor of T. E. McTeer, for repairs on Pine Road bridges, in said county, approved by said board, in the year aforesaid, for $40; and another claim, No. 1, in favor of C. P. McTeer, for repairs on bridges on White Hall and Combahee Ferry road, in said county, approved by said board on January 19th, 1900, for $21; and another claim, No. 9, in favor of R. A. McTeer, for repairs on bridge on Combahee and White Hall Ferry road, in said county, approved by said board on January the 19th, 1900, for $33. Whereas, it is respectfully submitted that the allegations following, to wit: 'He, the said John O. Jaques, well knowing the aforesaid claims to be false, fraudulent and unlawful,' are not conclusions of law, but are specific allegations of a violation of the statutory law, and his Honor erred in quashing the indictment.

"2. Because it is alleged in the first count of the indictment: 'The said contract for which said claims were made against the county of Colleton not having been let to the lowest responsible bidder, nor inspected or received as required by law, with intent to cheat and defraud the county of Colle-

ton.' In connection with the foregoing facts, alleges specifically a violation of law, and his Honor erred in holding otherwise and in quashing the indictment.

"3. That the claims approved by said defendant as county supervisor, Nos. 639, 536 and 9, are all alleged to be false, fraudulent and unlawful, and so known or should have been known to the defendant, with intent to cheat and defraud the county, states specifically the crime of official misconduct, under section 305, now section 388, of the Criminal Code, and his Honor erred in not so holding.

"As to the second count:

"4. That the allegation in regard to the claim in favor of G. A. Blocker, No. 692, alleges: 'No such work was ever performed, and so known or should have been known to the said John O. Jaques, county supervisor as aforesaid,' alleges an official fraud, and is indictable under section 305, now section 388, of the Criminal Code, and sufficiently states the offense under said section, and his Honor erred in quashing the indictment.

"5. That the allegation, to wit: 'And another claim against the said county, of Ashley Baggott, No. 7, for repairing bridges on Piney Grove and Saltkehatchie road, the items being 2,000 feet of lumber, hauling and work approved by said board of county commissioners as aforesaid, for $65, on the 19th day of January, 1900, and paid; and another claim against the said county, No. 634, in favor of G. A. Blocker, for furnishing lumber for said county, approved by said board of county commissioners, consisting as aforesaid, John O. Jaques, county supervisor,' states clearly the offense as defined in the statute; the allegation further being, in truth and in fact, no lumber was furnished by said claimant, all of which facts were well known to the said John O. Jaques, county supervisor as aforesaid.' It is respectfully submitted that in view of the foregoing allegations, it was error to quash the indictment.

"6. Because the indictment stated an offense at common law, to wit: Malfeasance in office, and the fact that in the

indictment the offense is styled by another name, was no ground to quash the same, and his Honor erred in holding that the indictment stated no offense at all.

"7. Because the allegations show negligence in the defendant committed habitually, in approving false and fraudulent claims knowingly, as therein alleged.

"8. Because the allegations of the first count, in alleging the claims to be false, fraudulent and unlawful, allege official misconduct on the part of the defendant, and his Honor erred in quashing the indictment."

The general principle as to the necessity of alleging the facts constituting fraud is thus stated in 9 Enc. of Pl. & Pr., 686, *et seq.:* "In alleging fraud, it is well settled, both at law and in equity, that the mere general averment, without setting out the facts upon which the charge is predicated, is insufficient. Whether the fraud be alleged in the declaration, complaint or bill, or set up by way of defense in the plea, answer or replication, it is essential that the facts and circumstances which constitute it should be set out clearly, concisely and with sufficient particularity to apprise the opposite party of what he is called upon to answer. The reason of this rule is that fraud is a conclusion of law from facts stated, and it is a well settled rule of pleading that facts and not legal conclusions are to be pleaded. Mere general averments of fraud, or the fraudulent conduct of a party without the facts, do not constitute a statement upon which the Court can pronounce judgment. It is not necessary, however, that all the minute facts tending to establish or confirm the allegation, should be set forth; a general averment of the facts from which, unexplained, the conclusions of law arise, is sufficient." On page 691 of the same volume, it is said: "So in criminal actions, where a party is charged with fraud, the facts constituting such fraud must be alleged in the pleadings." To the same effect is the language in 19 A. & E. Enc. of Law, 506, that: "a mere statement of the illegality of the act is insufficient, the particular facts constituting the illegality being required to be

stated." The sufficiency of the indictment must, however, be determined with reference to the provisions of section 56 of the Criminal Code, which is as follows: "Sec. 56. Every indictment shall be decreed and adjudged sufficient and good in law which, in addition to allegations as to time and place as now required by law, charges the crime, substantially in the language of the common law, or of the statute prohibiting the same, or so plainly that the nature of the offense charged may be easily understood; and if the offense be a statutory offense, that the same be alleged to be contrary to the statute in such cases made and provided." It must also be remembered that the foundation of the present proceeding is not fraud but official misconduct.

We will first consider whether the count in the indictment numbered one, states facts sufficient to constitute a violation of law. That count, after charging that the defendant "committed the crime of official misconduct," proceeds to state the facts constituting the official misconduct.

It alleges that the defendant, as supervisor, and as a member of the board of county commissioners, consisting of himself and two other members, falsely, fraudulently, corruptly and unlawfully did examine, approve and order to be paid, those claims therein particularly described for repairs on bridges, for the respective sums of $24, $21 and $33. That the defendant well knew the said claims to be false, fraudulent and unlawful. That the contracts for which said claims were made were not let to, the lowest responsible bidder, nor inspected and received as required by law, with intent to cheat and defraud the county of Colleton. It will thus be seen that the first fact alleged to show fraudulent conduct on the part of the defendant in ordering the claims to be paid, is that the contracts were not let to the lowest responsible bidder. After careful investigation we are unable to find any statute requiring that contracts such as those mentioned in this count of indictment, should be let to the lowest responsible bidder.

The second fact alleged is that the repairs on the bridges

were not inspected and received as required by law. Section 1 of an act approved 19th of February, 1900, page 280, contains the following provisions: "Section 1. That there shall be in each of the counties of this State a county board of commissioners, which shall be composed of the county supervisor, who shall be elected and hold office as now provided by law, and two commissioners, who shall be appointed by the governor, upon the recommendation of the members of the General Assembly from the several counties, or a majority of them, whose term of office shall be coterminal with that of the supervisor, with whom they are appointed to serve, and until their successors will be appointed and qualified. * * * One of said commissioners shall be present and act with county supervisor in awarding all contracts for the repair of all highways and bridges where the contract price exceeds $10, and shall likewise be present when such repairs are to be inspected and received." We think this act is applicable to the case under consideration. Under section 36 of the Civil Code, it went into effect in twenty days after its approval by the governor. No change was made in the election or term of office of the supervisor. Therefore, it was not necessary to wait until another election before entering upon his duties as one of the board of county commissioners. It appears from the allegations in the indictment that the defendant did enter upon the discharge of the duties as a member of said board. The act provides that one of the commissioners should be present when repairs on bridges were to be inspected and received, if the contract price exceeded $10. The indictment alleges that the contract price for the repairs on the bridges exceeded, respectively, $10, and that the repairs were not inspected and received as required by law. Therefore, with knowledge of these facts and with the intention alleged in the indictment, it was an act of official misconduct on the part of the defendant to order payment of said claims. It was likewise an act of official misconduct on the part of the defendant, when the

board failed to inspect and receive the repairs, with the alleged intention of cheating and defrauding the county.

We will next consider whether the facts alleged in the second count were sufficient to constitute a violation of law.

4    The fact that the defendant took part in approving claims for·work that was not performed and for materials that were not furnished, when he knew or should have known such facts, constituted official misconduct on his part.

It is the judgment of this Court, that the order of the Circuit Court be reversed.