1988

UNITED CAROLINA BANK, as Trustee under IRA dated June 25, 1987, for Lloyd D. Auten, Appellant v. CAROPROP, LTD., a South Carolina Corporation, and First South Savings Bank, Inc., of whom First South Savings Bank, Inc., is Respondent.

(429 S.E. (2d) 197)

Court of Appeals

*James M. Brailsford, III,* and *John S. Taylor, Jr.,* both of *Robinson, McFadden & Moore,* Columbia, *for appellant.*

*Steven M. Anastasion,* of *Callison, Tighe, Robinson & Anastasion,* Columbia, *for respondent.*

Heard March 16, 1993.

Decided Apr. 3, 1993; Reh. Den. May 3, 1993.

GOOLSBY, Judge:

United Carolina Bank, as trustee under IRA for Lloyd D. Auten (Auten IRA), brought this action against Auten IRA's cotenant, Caroprop, Ltd., and First South Savings Bank, Inc., a second mortgagee, for partition of certain property that Auten IRA and Caroprop owned as tenants-in-common. Caroprop defaulted. First South cross-claimed for foreclosure of Caroprop's undivided interest in the property. The trial judge referred the case to the master-in-equity with finality. Both Auten IRA and First South moved for partial summary judgment on the issue of priority. The master granted First South's motion. Auten IRA appeals. The issues on appeal concern whether Auten IRA can properly claim equitable subrogation and can properly assert a superior equitable lien against First South. We affirm.

Auten IRA and Atlantic Properties, Ltd., purchased approximately 45.91 acres from Interstate Investment Associates, III. As part of the purchase price, they gave Interstate a note that was secured by a first mortgage on approximately 31 acres of the property.

Atlantic subsequently conveyed its undivided interest in the property to Caroprop. Caroprop, in turn, gave a second mortgage on its share of the property to First South. Although Caroprop assumed no liability on the original note given Interstate by Auten IRA and Atlantic, Caroprop's interest remained subject to Interstate's mortgage lien.

Initially, Auten IRA and Caroprop both made payments on the Interstate note. When Caroprop, however, failed to make any more payments on the note, Interstate instituted a foreclosure action on the property.

To prevent foreclosure of Interstate's mortgage, Auten IRA paid the entire balance due Interstate on its note in exchange for an assignment of Interstate's mortgage. Auten IRA also paid Caroprop's share of past-due property taxes to prevent the sale of the property at a tax sale. Caroprop never reimbursed Auten IRA for any of the payments Auten IRA made on Caroprop's behalf.

## I.

Auten IRA contends it is entitled to be equitably subrogated to the rights of Interstate as first mortgagee because it paid the Interstate mortgage debt, including the portion owed by Auten IRA's co-tenant.

A party claiming the right of equitable subrogation for having paid the debt of another must have had a direct interest in the discharge of the debt or of the lien and must have been secondarily liable for the debt or for the discharge of the lien. Even then, the right to be equitably subrogated will not be granted if the other party would suffer injustice were subrogation allowed. *Dedes v. Strickland,* — S.C. —, 414 S.E. (2d) 134 (1992); *Pee Dee State Bank v. Prosser,* 295 S.C. 229, 367 S.E. (2d) 708 (Ct. App. 1988).

The master held equitable subrogation is not appropriate here because Auten IRA "[was] primarily liable to the holder for payment of the entire indebtedness secured by Interstate's mortgage." We agree with the master.

When Auten IRA and Atlantic executed the note in question, each "promise[d] to pay . . . Interstate . . . the sum of [$966,042.00], together with interest. . . ." Because the note did not otherwise specify, Auten IRA and Atlantic, as makers of the note, were jointly and severally liable for its payment. S.C. Code Ann. § 36-3-118(e) (1976). Being absolutely required, either by itself or with Atlantic, to pay the indebtedness represented by the note, Auten IRA's liability was, therefore, primary and not secondary.

Since Auten IRA, as a mortgagor and a co-maker of the note, had an absolute duty to pay the note and satisfy the mortgage, Auten IRA's payment of the whole amount of the indebtedness then owed Interstate under the note extinguished Interstate's mortgage and left nothing to which an equitable right of subrogation could attach. *See* POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 1213, at 644 (5th ed. 1941) ("[I]f payment of the mortgage debt is made to the mortgagee . . . by a party . . . whose duty it is to pay the debt absolutely . . . , such payment operates ipso facto as an end of the mortgage and the lien is completely destroyed [and] [t]he party so paying is not subrogated to the rights of the mortgagee . . . , even if [the party] should receive a formal assignment. . . ."); *see also Dunn v.*

*Chapman,* 149 S.C. 163, 169, 146 S.E. 818, 820 (1929) ("[E]quity will deny the right of subrogation to one who pays or has paid a debt for which he was *at the time* primarily liable.").

But Auten IRA argues it was primarily liable only for its own share of the debt and, based on principles of suretyship, was only secondarily liable for its co-tenant's share. This argument, however, ignores the plain language of the note itself and the fact that Auten IRA never conveyed away its ownership interest in the mortgaged property. *Cf. Dunn* 149 S.C. at 170-71, 146 S.E. at 821 (where a mortgagor conveys the mortgaged premises and the grantee assumes the mortgage, the premises becomes the primary fund out of which the mortgage is collectible and the mortgagor becomes secondarily liable for the mortgage debt).

At no time was Auten IRA ever secondarily liable for any part of the mortgage debt that it and Atlantic contracted to pay Interstate. When Auten IRA paid the mortgage debt, it paid a debt for which it was then primarily liable as between it and Interstate. Under these circumstances, equitable subrogation does not lie. *See Caito v. United California Bank,* 20 Cal. (3d) 694, 576 P. (2d) 466, 144 Cal. Rptr. 751 (Cal. 1978) (wherein the court held the doctrine of equitable subrogation does not apply when a co-tenant debtor is primarily liable for the full debt); *Bunker v. Llewellyn,* 221 N.C. 1, 18 S.E. (2d) 717 (N.C. 1942) (wherein the court held the payment by co-makers of a note on which they were jointly and severally bound after other co-makers failed to pay their pro rata share of the note when it was due extinguished the note and subrogation would not lie); *cf. Jeffcoat v. Morris,* 300 S.C. 526, 389 S.E. (2d) 159 (Ct. App. 1989) (wherein the court held the payment of a note by the receiver of a co-maker operated to extinguish the note and to discharge the liability of the co-makers).

## II.

Auten IRA also contends it possesses, because it paid the Interstate mortgage debt and the taxes dues on the mortgaged property, including the portions owed by its co-tenant, an equitable lien that is superior to First South's second mortgage. Auten IRA argues First South's mortgage is subordinate to its equitable lien because it acquired an inchoate equi-

table lien at the time it and Atlantic mortgaged the property to Interstate. This inchoate equitable lien became complete, Auten IRA asserts, when it paid off the mortgage debt and paid off the taxes.

For an equitable lien to arise, there must be a debt, duty, or obligation; specific property to which the debt, duty, or obligation attaches; and an expressed or implied intent that the property serve as security for payment of the debt. *First Federal Savings and Loan v. Finn,* 300 S.C. 228, 387 S.E. (2d) 253 (1989); *Carolina Attractions v. Courtney,* 287 S.C. 140, 337 S.E. (2d) 244 (Ct. App. 1989). An equitable lien relates back to the time that it was created by the conduct of the parties. *Fibkins v. Fibkins,* 303 S.C. 112, 399, S.E. (2d) 158 (Ct. App. 1990); 51 Am. Jur. (2d) *Liens* § 22, at 161 (1970).

Regarding Auten IRA's payment of the debt owed Interstate, no debt, duty, or obligation existed between Auten IRA and Caroprop until Auten IRA paid off this debt and no equitable lien, inchoate or otherwise, arose prior to that time. *Cf. S.C. Federal Savings Bank v. San-A-Bel Corp.,* — S.C. —, 413 S.E. (2d) 852 (Ct. App. 1992) (wherein the court held a purchaser's lien arose when money was paid). Since First South had taken its second mortgage prior to the time Auten IRA paid off the Interstate debt, Auten IRA's equitable lien was junior to First South's mortgage lien. *Powers v. Fidelity & Deposit Co. of Maryland,* 180 S.C. 501, 509-10, 186 S.E. 523, 527 (1936) (" 'In the absence of statutory regulation the common law establishes liens in the order of their acquisition, the first in order of the time standing first in order of rank.' ") (quoting 17 R.C.L. § 20, at 610).

The master did not address the issue of whether Auten IRA's payment of Caroprop's pro rata share of the taxes due on the property entitled Auten IRA to an equitable lien that is superior to First South's mortgage. *See Bank of Tupelo v. Collier,* 191 Ga. 852, 14 S.E. (2d) 59 (Ga. 1941) (a tenant-in-common who pays taxes and street improvement assessments on common property to protect his interest is entitled to an equitable lien against the interest of his co-tenant for the co-tenant's share of the taxes and assessments and the lien is superior to a security deed given by the co-tenant). Auten IRA, moreover, made no motion asking the

court to do so pursuant to Rule 59(e), SCRCP. The issue, therefore, is not preserved for appellate review. *See Talley v. South Carolina Higher Educ. Tuition Grants Comm.*, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (an issue raised but not ruled on by the trial court is not preserved and the complaining party must move before the trial court to amend the judgment pursuant to Rule 59(e), SCRCP).

Affirmed.

CURETON, J., and LITTLEJOHN, Acting J., concur.