12204

## ENTERPRISE BANK v. FEDERAL LAND BANK OF COLUMBIA ET AL.

### (138 S. E., 146)

SUBROGATION—BANK LENDING MONEY TO SATISFY MORTGAGES HELD SUB-
ROGATED TO LIENS AS AGAINST SUBSEQUENT RECORDED MORTGAGE EX-
CUTED BY ONE WHOSE DEED WAS UNRECORDED.—Where assignee of
mortgage failed to see that deed to his mortgagor was recorded,
bank lending money on mortgage to pay off prior mortgages, which
were thereupon marked satisfied upon the record, was entitled to
subrogation to lien of such mortgages and to priority over assignee's
mortgage, in that he had paid the debt in which he had a direct
interest and for which he was secondarily liable, and no injustice
resulted to either party by allowance of such subrogation.

Before BONHAM, J., Oconee, October, 1925. Reversed
and remanded.

Action by the Enterprise Bank against the Federal Land
Bank of Columbia and others. Decree for plaintiff, and de-
fendant named appeals.

*Mr. R. T. Jaynes,* for appellant Federal Land Bank, cites:
*When entitled to subrogation to the rights of first lien
holder:* L. R. A., 1917-A, 731–4; 46 L. R. A., 1049; 35
Atl., 897; 54 N. Y. S., 424; 50 Pac., 1032; 31 S. E., 794;
61 A. S. R., 146; 30 R. L. A., 829; 39 S. W., 194; 77 Ind.,
241; 44 Pac., 292; 33 S. E., 336; 35 Ia., 157; 32 A. S. R.,
566; 18 Ont., 533. *One who pays a debt at instance of
debtor is not a volunteer:* 44 Ark., 507; 3 Pom. Eq. Jur.,
Sec. 1212; 39 Ark., 542; 81 Ark., 257; 137 Fed., 967; 49
C. C. A., 510; 111 Fed., 652; 32 N. J. Eq., 133; 102 Ill.,
29; 168 Ill., 618; 104 Mich., 527; 75 Wis., 191; 49 Wis.,
198; 72 Miss., 1058; 58 Tex., 696; 42 C. C. A., 297.
*Theory of subrogation:* 32 A. S. R., 566; 57 Am. Rep.,
187; 2 Atl., 831; 25 R. C. L., 1339; 37 Cyc., 473; 19 R.
C. L., 481; *Id.,* 473; 79 So., 742; 164 N. W., 1852. *Cases
distinguished:* 45 S. C., 127; 42 S. C., 22; 12 S. C., 488;

Note: On right of volunteer advancing money to pay off incumbrance
to be subrogated to lien in absence of agreement, see 25 R. C. L., 1337;
5 R. C. L. Supp., 1373; 6 R. C. L. Supp., 1514.

77 S. C., 426; 100 S. C., 373; 21 S. C., 55; 10 R. C. L., 839, Sec. 144; 120 S. C., 42, 57; 119 S. C., 188; Speers Eq., 37; 29 S. C., 501; 31 S. E., 794; 38 S. E., 374. *South Carolina cases allowing subrogation:* 26 S. C., 34; 18 S. C., 123; 41 S. C., 337; 82 S. C., 259; 62 S. C., 300. *Where one of two innocent persons must suffer loss, it must be borne by the one who by his conduct rendered the injury possible:* 32 S. C., 348; 67 S. C., 451; 100 S. C., 64; 113 S. C., 285; 10 R. C. L., 695.

*Mr. J. R. Earle,* for appellant, Walhalla Farm Loan Association, cites: *Cases distinguished:* 45 S. C., 127. *Subrogation:* 79 So., 742.

*Messrs. Herndon & Thompson,* for respondent, cite: *Recording of mortgage sufficient; not necessary that deed of conveyance of person executing and delivering mortgage also be recorded:* 45 S. C., 127; 12 S. C., 488; 77 S. C., 420; 100 S. C., 373. *Defendants estopped from denying validity of deed:* 10 R. C. L., 839; 21 S. C., 55, 70. *Subrogation:* 25 R. C. L., 1337, Sec. 22; *Id.,* 1354, Sec. 38; 120 S. C., 57; 134 S. E., 263, 266; Speers Eq., 37; 29 S. C., 501; 16 L. R. A. (N. S.), 470; 25 R. C. L., 1324, Sec. 11; 123 S. E., 883; 37 A. L. R., 378; 134 S. E., 441; 47 A. L. R. (N. S.), 1188; 39 S. W., 895; L. R. A., 1917-A, 734; 72 So., 644; 134 S. E., 211; 24 S. C., 446; 3 Brev., 404; 32 A. L. R., 829, 839; 11 A. & E. Enc. L., 188.

May 12, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action by the plaintiff, as assignee, to foreclose a certain alleged mortgage executed by Maud Talley and L. O. Talley to J. L. Chastain, dated January 23, 1920, as security for the payment of six notes of $216.70 each, aggregating $1,300.20, and covering a certain tract of land,

NOTE: See the case of the *Scottish American Mortgage Company, Limited, v. Clowney,* 70 S. C., 229.—*Reporter.*

described in the complaint, containing 50 acres more or less. The Talley notes and mortgage were assigned by J. L. Chastain to the plaintiff, Enterprise Bank, eight days later, on January 31, 1920, as collateral security for the payment of a note given that day by Chastain to the bank for $2,000.00. The Talley mortgage was not recorded at that time, and was not, until February 9, 1921, when it was recorded by the bank.

There was offered in evidence a deed from Chastain to Maud Talley, his daughter, purporting to convey the 50-acre tract to her, dated January 23, 1920, the same day upon which the Talley notes and mortgage were executed. There is some doubt whether this deed was ever delivered, but in the view which we have taken of the case that question may be disregarded. This deed has never been recorded.

Prior to the date of this transaction between Chastain and Maud Talley (January 23, 1920), Chastain had executed three mortgages to one James Phinney: (1) Mortgage dated January 25, 1917, securing note of that date for $4,441.89, recorded February 3, 1917, covering the home tract of 182 acres, not including the 50-acre tract. (2) Mortgage dated January 20, 1919, securing note of that date for $1,500.00, recorded January 27, 1919, covering the home tract of 182 acres and the 50-acre tract. (3) Mortgage dated November 1, 1919, securing note of that date for $10,000.00, recorded November 10, 1919, covering both of the above-mentioned tracts and a third tract of 250 acres. (This last-named tract was later conveyed, November 20, 1920, by Chastain to M. A. Moss, who had become the assignee of that mortgage, for a credit of $9,000.00 on the $10,000.00 mortgage.)

On April 7, 1920, James Phinney assigned the three notes and mortgages above described to M. A. Moss.

On January 20, 1921, M. A. Moss, as assignee, as stated, of the three mortgages, instituted foreclosure proceedings

against Chastain upon all of them. *Lis pendens* was filed February 7, 1921. The Master reported March 28, 1921, on the first mortgage, amount due $3,931.22; on the second, $1,816.45; on the third, $1,916.54; total on all three, $7,-664.21; and a decree of foreclosure followed. in conformity with the report and judgment duly entered up on April 16, 1921.

On February 9, 1921, two days after the filing of *lis pendens,* the Enterprise Bank (the plaintiff herein) lodged the Talley mortgage, which had been assigned to it, for record.

On April 6, 1921, his land being about to be sold, Chastain applied to the Federal Land Bank for a loan of $8,000.00, to be secured by a first mortgage, as required by the Act of Congress, upon the home tract of 182 acres and the 50-acre tract, above referred to. The purpose of the proposed loan, as stated in the application, was to pay off the mortgages above enumerated, amounting to $7,600.00, and to take $400.00 stock in the National Farm Loan Association; the applicant further represented and guaranteed the statements contained in the application, and that no liens or incumbrances existed against the property except as stated. The application was approved for $6,000.00, and a loan for that amount was accepted by Chastain.

A most elaborate and painstaking abstract was made of the title by J. R. Earle, Esq., a reputable attorney if the Oconee bar, who reported the title marketable in Chastain and accompanied the report with a statement of the liens. He did not report the Talley mortgage for the manifest reason that the deed from Chastain to Maud Talley had not been recorded; there was nothing to put him upon notice of such a mortgage under these circumstances.

The loan was then closed by the remittance by the Federal Land Bank to J. R. Earle, Esq., of a check for $5,677.50 payable to Earle and Chastain, that being the loan, $6,000,

less $300 stock in the N. F. L. Association and $22.50 ex-
penses, dated November 14, 1921. The check was indorsed
by the payees and $5,490.75 placed in bank to the credit of
M. A. Moss, the mortgage creditor, the difference, $186.75,
being paid to one of his attorneys, on November 18, 1921.

On the same day, November 18, 1921, Chastain executed
a mortgage upon the two tracts, 182 acres, home place, and
the 50-acre tract, as security for his note to the Federal
Land Bank for $6,000.00. This mortgage was recorded on
the same day.

On the same day, satisfaction of mortgage by Chastain
to Phinney (assigned to Moss), dated January 20, 1919,
and covering the 50-acre tract, was entered by indorsement
on the record of the mortgage, "Lien released by satisfac-
tion of judgment under foreclosure"; and like satisfactions
were entered as to the other two mortgages. On November
19, 1921, the next day, Chastain executed his note and
mortgage to M. A. Moss for the balance of the mortgage
and judgment debts, in the sum of $2,363.01, the amount
unpaid upon them after the application of the $5,677.50.

This action was instituted by the Enterprise Bank on
August 16, 1922, for the foreclosure of the Talley mort-
gage which had been assigned by Chastain as above stated.
The defendants named were J. L. Chastain, W. T. Addis,
indorser on note of Chastain to Enterprise Bank, M. A.
Moss, Maud Talley, L. O. Talley, her husband, and Federal
Land Bank. Later, other parties were brought in as de-
fendants claiming an interest in the property.

The contest now before the Court appears to be solely
between the Enterprise Bank and the Federal Land Bank as
to priority over the proceeds of sale of the 50-acre tract.

The case was referred to M. O. White, Esq., Master of
Oconee County, who took the testimony and filed a report
holding that the Enterprise Bank had the prior lien, and
upon exceptions to his report his Honor, Judge Bonham,
confirmed it. From his decree the Federal Land Bank has

appealed upon exceptions which fairly raise the points hereinafter discussed and decided. The basis of the decree may be found in the following statement:

"At the time this loan was made by the Federal Land Bank the Talley mortgage to the plaintiff bank (that is, to Chastain, and assigned by him to the Enterprise Bank) had been on record since the 9th day of February, 1921, and was constructive notice of the Talley mortgage. *Van Diviere v. Mitchell,* 45 S. C., 127; 22 S. E., 759. This being so, the loan made by the defendant, Federal Land Bank, was a voluntary one, and the doctrine of subrogation would not apply. 25 R. C. L., 1337. *Prudential Investment Co. v. Connor,* 120 S. C., 42, 57; 112 S. E., 539. *Capitol National Bank v. Holmes,* 43 Col., 154; 95 P., 314; 16 L. R. A. (N. S.), 470; 127 Am. St. Rep., 108. *Citizens' Mercantile Co. v. Easom,* 158 Ga., 604; 123 S. E., 883; 37 A. L. R., 378."

This statement fairly presents the two questions involved in this appeal.

Counsel for the appellants appear to concede that under the cases of *Van Diviere v. Mitchell,* 45 S. C., 127; 22 S. E., 759, and *Younts v. Starnes,* 42 S. C., 22; 19 S. E., 1011, the first proposition announced by the Circuit Judge, that the Talley mortgage having been on record since February 9, 1921, prior to the execution of the Federal Land Bank mortgage, the record of it was constructive notice of that mortgage, cannot be successfully assailed, as we find no exception covering this point and no discussion of it in the argument of counsel.

Speaking for himself alone, the writer of this opinion is very far from conceding the controlling effect of those decisions, which in several aspects are distinguishable from the case at bar, in view of the object of the recording statute to give notice of prior liens and the utter impossibility, in the present case, of a discovery of the Talley mortgage, the deed from Chastain to Maud Talley never having been placed upon record.

This leaves the very interesting question, which has been most ably presented and argued by the respective counsel, whether the Federal Land Bank, under the circumstances, is entitled to be subrogated to the lien of the Phinney mortgages which had been assigned to Moss, paid off, and marked satisfied upon the record.

To review briefly the situation of the parties at the time the Federal Land Bank mortgage was taken: The Enterprise Bank had accepted an assignment of the Talley mortgage; at that time the Phinney mortgages were liens upon the 50-acre tract, which was also covered by the Talley mortgage; the Enterprise Bank, of course, took the assignment of the Talley mortgage, subject to the liens of the Phinney mortgages which had been duly recorded; the Enterprise Bank failed to see that the deed from Chastain to Maud Talley was recorded, if, indeed, it had ever been delivered; the Enterprise Bank neither did nor refrained from doing anything by reason of the negotiations between Chastain and the Federal Land Bank; its position was not in any wise altered to its prejudice by anything that the Federal Land Bank did; its claim to priority rests solely upon the fortuitous circumstances, not brought about by anything it did or refrained from doing, that the satisfaction of the Phinney mortgages advanced the lien of its assigned mortgage—a purely accidental circumstance, involving no possible equity in its favor.

On the other hand, the Federal Land Bank exercised the most meticulous care in satisfying itself of the validity and freedom from incumbrances of the Chastain title to the land and ascertained all that could possibly have been ascertained from the records; it accepted Chastain's application for a loan, which explicitly stated that the money was to be applied to the payment of the Phinney mortgages and that the Federal Land Bank should have a first lien upon the land as the Act of Congress required; it was obligated by its contract

with Chastain to make the loan upon the conditions named; it carried out to the letter its engagements; it worked no hurt to the Enterprise Bank, and, if it should be allowed subrogation, the Enterprise Bank would be in no worse condition than it was before, holding a mortgage subject to the Phinney mortgages; the complication has arisen, not from any fault of the Federal Land Bank but because the Enterprise Bank did not take the precaution of having the Chastain deed to Maud Talley recorded. Under these circumstances, the equities are all in favor of the Federal Land Bank, and it should be protected.

The doctrine of subrogation is said to be "one of equity and benevolence, * * * and the basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity." 37 Cyc., 305.

The position of the Federal Land Bank answers completely the essential elements of subrogation stated in the opinion of the writer upon the petition for a rehearing in the case of *Prudential Co. v. Connor*, 120 S. C., 42; 112 S. E., 539: (1) That he has paid the debt. (2) That he was not a volunteer, but had a direct interest in the discharge of the debt or lien. (3) That he was secondarily liable for the debt or for the discharge of the lien. (4) That no injustice will be done to the other party by the allowance of the equity.

As to the first element, there is no question but that the Federal Land Bank has paid the Phinney mortgages; as to the second, the Federal Land Bank was not a volunteer, but was under a legal obligation upon the execution of Chastain's mortgage to pay off the Phinney mortgages; as to the third, for the same reason it was secondarily liable for the Phinney mortgages; as to the fourth, no possible injustice would be

imposed upon the Enterprise Bank by allowing the subrogation.

In 37 Cyc., 376, it is said:

"Such persons * * * can obtain equitable right to be subrogated only by virtue of an agreement, express or implied, or by request of the debtor to pay, which is in effect an implied contract. * * * A person who has paid a debt under a colorable obligation to do so, that he may protect his own claim, or under an honest belief that he is bound, will be subrogated. * * * And subrogation is sometimes extended to cases of payment by persons not legally bound to pay, but who do so, not as volunteers, but with a well-founded expectation, justified by the conduct or contract of the debtor, that they will be entitled to hold all the securities for their indemnity which the creditor had against the debtor."

"Under the equitable principle of subrogation, one who pays a mortgage debt under an agreement for an assignment or of a new mortgage, for his own protection or for the benefit of another, acquires a right to the security held by the other." 1 Jones, Mtg. (6th Ed.), § 874.

"The right of subrogation applies in general in favor of any person having an interest in the property who, not being under any obligation to pay the mortgage debt, does so for the benefit of the debtor, as by furnishing money to the mortgagor to take up the mortgage under an agreement to execute a new one." *Id.*

"And so, if one loans on a mortgage without actual notice of a prior recorded mortgage for the purpose of satisfying a vendor's lien on the mortgaged land which was superior to the prior mortgage, the second mortgagee is subrogated to the vendor's lien to the amount that the money so loaned was actually applied to the extinguishment of such lien." *Id.*, § 874c.

In the case of *Hill v. Ritchie,* 90 Vt., 318; 98 A., 497; L,. R. A. (N. S.), 1917-A, 731, Flynn purchased of Henson a pair of horses and gave him a lien note for $400; later Flynn gave Ritchie a mortgage upon the horses to secure an indebtedness of $1,200. Later still, Henson was pressing Flynn upon the $400 note, and Hill paid off the Henson note at the request of Flynn and upon an understanding that he was to have a new security on the horses for the amount paid Henson. The Ritchie mortgage was duly recorded. In the action of Hill against Ritchie, the question arose whether Hill was entitled to be subrogated to the lien note which he had paid off to Henson, and which lien was prior to that of Ritchie. The syllabus is as follows:

"One satisfying a lien note at the request of the property owner, upon the understanding that he is to have new security upon the property released, acting in ignorance of a second mortgage lien on the property, although it is on record, is entitled to subrogation to the rights of the first lien holder."

In the opinion, it is stated:

"The facts reported are equivalent to a finding that the plaintiff paid the lien note at the request of Flynn, and upon an understanding with Flynn that he was to have a new security on the property released. So the plaintiff was not an intermeddler or a mere volunteer, and his payment of the first lien did not necessarily give priority to the second. If the payment was made under a material and excusable mistake of fact, and no rights of innocent parties have intervened, the first security will be kept alive as against the holder of the subordinate lien."

The Court further stated:

"This is not a case where the relief of the plaintiff will cause an actual loss to the defendant. Ritchie has not increased his investment since the payment of the lien note, and a reinstatement of his security will simply leave him in his original position. He will lose nothing but the gain

which would otherwise have accrued to him from the plaintiff's mistake. Nothing short of a very culpable negligence will bar relief in these circumstances. Parties who have paid prior liens at the request of the debtor in ignorance of the existence of subsequent incumbrances have been held entitled to the remedy of subrogation, notwithstanding a failure to examine the records."

In *So. C. O. Co. v. Napoleon Co.*, 108 Ark., 555; 158 S. W., 1082; 46 L. R. A. (N. S.), 1049, Martin, the owner of the property, gave a mortgage to Wright and later gave another to Yeatman. Later still, the Napoleon Company recovered a judgment against Martin. Later, Martin applied to the So. C. O. Co. for a loan with which to pay off the Wright and Yeatman mortgages and gave that company a mortgage to secure the necessary funds. With the money thus borrowed, Martin paid off the Wright and Yeatman mortgages and they were satisfied of record, the company having no actual notice of the intervening judgment lien of the Napoleon Company. There was no agreement that the lien of the mortgages given to Wright and Yeatman should be kept alive, but Martin told the So. C. O. Co. that the borrowed money was to be used to pay them off and that the mortgage securing its payment would be a first lien upon the property.

The Court said:

"It is undisputed that both the mortgagor, Martin, and the mortgagee, appellants, understood when the mortgage was executed that the debts secured by the two prior mortgages were to be paid with the money advanced on this mortgage, and that it would be a first lien against the property for the money so advanced. It was not agreed, and it was not the intention of the parties that said other mortgages should be assigned to appellee upon the payment of the debts secured by them with money advanced by it, it is true, but it would have had the right to insist upon such assignment, and since its security failed to constitute a first lien

because of the judgment of appellee, of which appellant was ignorant at the time of taking its mortgage, we see no reason why equity should not treat it as an assignee of the first mortgages discharged with the money advanced by it and under its doctrine of equitable assignment and effectuate the agreement with the lender that its security should be a first lien. It had the right after its mortgage was made to apply the money advanced in payment of the other mortgages and take an assignment thereof to protect itself, and in holding that appellant became the equitable owner of said mortgages upon their payment with the money so advanced by it, and in applying the doctrine of subrogation the appellee company is in no worse position than it would have been if said mortgages had not been paid and no injustice is done it, for it cannot complain that the subrogation makes its position less favorable than it would have been if appellant company had not made the loan and advanced the money to pay off said mortgages."

In *Seeley v. Bacon* (N. J. Ch.), 34 A., 139, Francis Seeley conveyed to Tomlin a store building, upon which there was an outstanding mortgage to Robert Seeley of $1,000. Tomlin gave Francis Seeley a purchase-money mortgage for $3,000, and later gave Bacon a mortgage indemnifying him as an indorser. All of these mortgages were duly recorded. Later, Tomlin borowed from Mrs. Mulford $3,500, which was applied *pro rata* to the Francis Seeley mortgage of $3,000 and the Robert Seeley mortgage of $1,000. It was agreed between all parties that Tomlin should give two new mortgages, one to Mrs. Mulford for $3,500, and the other to Francis Seeley for $500.00; that the Robert Seeley mortgage of $1,000 and the Francis Seeley mortgage of $3,000 should be marked satisfied of record; that the two new mortgages of $3,500 and $500 should be a first lien upon the property. The new mortgagees had no actual notice of the Bacon mortgage which had intervened, although it was of record.

Sustaining the claim of subrogation, the Court said:

"In my judgment, under the circumstances of this case, Phœbe Mulford, and, if necessary, Francis Seeley, also, should be subrogated to the rights of the original mortgagees in the two mortgages to secure the amount of $3,500 advanced by Phœbe Mulford and the $500 advanced by Francis Seeley. Neither Phœbe Mulford nor Francis Seeley stands in the attitude of a mere volunteer stepping in and paying the mortgage debt without any request by, or any understanding with, the original mortgagors and mortgagees. On the contrary, the advance of the money by Phœbe Mulford is to be regarded as an advance made both by the request of Tomlin, the mortgagor, and Seeley, the mortgagee. Further than this, it is to be regarded as an advance made with an understanding existing between all the parties that the new mortgages should stand upon the same footing as the old in respect to their rank as securities."

The Court further remarked:

"Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised. For instance, if the mortgage held by Mr. Bacon had been taken for money advanced by him at the time, and had been taken after the cancellation of the old mortgages, and before the record showed the existence of the new mortgage, a case would have been presented requiring the strongest evidence of unpreventable mistake to justify the reinstatement of these mortgages. But, as has already been observed, the facts in respect to the mortgage held by Mr. Bacon are entirely different. He advanced nothing at the time his mortgage was accepted, and the old mortgages were still a subsisting lien at that time. So it is perceived that the security of his mortgage, after the restoration of the two old mortgages, is exactly the same as it was before the

cancellation. No valuable consideration was advanced by Bacon at the time of the execution of the mortgage to him on the faith of the supposed nonexistence of the two old mortgages, arising from their cancellation of record. By the decree asked for, the parties will be placed in *statu quo.*"

The position taken by the Courts in the above cases is sustained by the following cases: *Emmert v. Thompson,* 49 Minn., 386; 52 N. W., 31; 32 Am. St. Rep., 566; *Bruse v. Nelson,* 35 Iowa, 157.

And see, generally, *Wilkins v. Gibson,* 113 Ga., 31; 38 S. E., 374; 84 Am. St. Rep., 204. *Home Savings Bank v. Bierstadt,* 168 Ill., 618; 48 N. E., 161; 61 Am. St. Rep., 146. *Heisler v. C. Aultman & Co.,* 56 Minn., 454; 57 N. W., 1053; 45 Am. St. Rep., 486. *Seeley v. Bacon* (N. J. Ch.), 34 A., 139; 2 Pom. Eq. Jur., § 856. *Sidener v. Pavey,* 77 Ind., 241. *Cumberland Building & Loan Association v. Sparks,* 111 F., 652; 49 C. C. A., 510. *Rachal v. Smith,* 101 F., 159; 42 C. C. A., 297. *Wilkins v. Gibson,* 113 Ga., 31; 38 S. E., 374; 84 Am. St. Rep., 204. See, also, 5 L. R. A. (N. S.), 845, third division of case note to *Capen v. Garrison. Gore v. Brian* (N. J. Ch.), 35 A., 897. *Lanier v. Milliken,* 25 Misc. Rep., 59; 54 N. Y. S., 424. *George v. Butler,* 16 Utah, 111; 50 P., 1032. *Bank v. Tillman,* 106 Ga., 55; 31 S. E., 794. *Bank v. Bierstadt,* 168 Ill., 618; 48 N. E., 161; 61 Am. St. Rep., 146. *Union Mortgage Banking & Trust Co. v. Peters,* 72 Miss., 1058; 18 So., 497; 30 L. R. A., 829. *Whiteselle v. Texas Loan Agency* (Tex. Civ. App.), 39 S. W., 194.

The judgment of this Court is that the decree of the Circuit Court be reversed, and that the case be remanded to that Court for further proceedings not inconsistent with the conclusions herein announced.

MR. CHIEF JUSTICE WATTS, MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.