1136

PEE DEE STATE BANK, Respondent v. Larry N. PROSSER, J. Oral Strickland, Tina L. Strickland, and Universal Mortgage Corporation of Wisconsin, Defendants, of whom Larry N. Prosser, Tina L. Strickland, and Universal Mortgage Corporation of Wisconsin are Appellants.

(367 S. E. (2d) 708)

Court of Appeals

*Lawrence B. Orr, John R. Chase, James C. Rushton, III,* and *Mary Layton Wells,* Florence, *for appellants.*

*Ray Coit Yarborough,* Timmonsville, *for respondent.*

Heard Feb. 23, 1988.

Decided April 11, 1988.

CURETON, Judge:

Pee Dee State Bank brought a mortgage foreclosure action against Oral and Tina Strickland. The suit involves a series of transactions concerning a condominium. The primary issues are equitable subrogation, novation, accord and satisfaction, and release. The trial judge found Pee Dee had a valid mortgage and was entitled to a judgment of foreclosure and deficiency arising from the sale of the property. Universal Mortgage Corporation, Tina Strickland, and Larry Prosser appeal. We affirm in part, reverse in part and remand to the trial court.

I.

The property in question is a condominium in Florence County. The property was owned by Kenneth Saleeby and Larry Prosser. The first date in the chronology of events is October 15, 1981. On that day, Saleeby and Prosser gave a mortgage on the property to Mutual Savings and Loan Association. On that date, Saleeby and Prosser then also deeded the property to Oral Strickland for a purchase price of Eleven Thousand Dollars ($11,000) and assumption of the Mutual Savings and Loan mortgage. Strickland gave a mortgage on the condo to Saleeby and Prosser in the amount of

Ten Thousand Five Hundred Dollars ($10,500). The mortgages and deed were recorded.

On February 10, 1982, a note and mortgage were executed by Oral and Tina Strickland to Pee Dee State Bank. The note was in the amount of Twenty-Five Thousand Dollars ($25,000). The note was due and payable on June 10, 1982. The mortgage listed two pieces of property. One was the family residence owned by Oral and Tina Strickland. The other was the condominium owned by Oral Strickland. This mortgage was recorded.

On April 29, 1983, Oral Strickland deeded the condominium back to Larry Prosser. The deed indicates the consideration was Three Dollars ($3.00) and "assumption of mortgage." On this same day Prosser executed a note and mortgage to Peoples Federal Savings and Loan. The mortgage was on the condominium. The record indicates the note was in the amount of Thirty Thousand Three Hundred Dollars ($30,300). The settlement statement and escrow card from the closing indicate approximately Twenty-Six Thousand Dollars ($26,000) was paid to Mutual Savings and Loan as a "first mortgage payoff." The Mutual Savings and Loan mortgage was marked satisfied on May 6, 1983. Also, outstanding city and county taxes on the property were paid from proceeds of the Peoples Federal Savings loan. The Peoples Federal Savings mortgage was later assigned to Universal Mortgage Corporation. For ease of reference, we will refer to this transaction in Part IV of this opinion as the Universal mortgage.

On May 17, 1983, Pee Dee State Bank received Six Thousand Dollars ($6,000) from the Stricklands. Pee Dee released the residence from its mortgage on May 19, 1983.

Beginning on November 15, 1983, Oral Strickland executed a series of loan extension agreements with Pee Dee State Bank. All of the extensions were solely executed by Oral Strickland. The extensions related to the Twenty-Five Thousand Dollar ($25,000) loan negotiated in February 1982. Strickland signed four extensions with the last bearing the date of December 10, 1984. This last extension raises the issues of novation and accord and satisfaction. This matter will be discussed in more detail but it is relevant to note at this point that Strickland also executed an unsecured com-

mercial note on December 10, 1984, in the amount of Twenty-Two Thousand Five Hundred Dollars ($22,500).

Finally, the chronology of events reflects that Oral and Tina Strickland were divorced on April 19, 1984. In the family court order, Oral Strickland was held responsible for any loans to Pee Dee State Bank.

## II.

This is an action in equity tried by the court. *Continental Mtg. Investors v. Quail Run*, 280 S. C. 409, 312 S. E. (2d) 272 (Ct. App. 1984) (mortgage foreclosure is an action in equity). The Court of Appeals has the authority to make findings of fact in accordance with its own view of the preponderance of the evidence, however, it is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a position to judge their credibility. *Alala v. Peachtree Plantations, Inc.*, 292 S. C. 160, 355 S. E. (2d) 286 (Ct. App. 1987).

## III.

The first issue which must be resolved is whether Pee Dee has an existing mortgage on the condominium. Tina Strickland and Larry Prosser argue Pee Dee does not have a mortgage because the transactions between Oral Strickland and Pee Dee constitute a novation or an accord and satisfaction. They argue Pee Dee has an unsecured commercial note executed by Oral Strickland on December 10, 1984. The trial judge disagreed and held Pee Dee has a valid mortgage. We agree.

The appellate record contains several documents bearing the date of December 10, 1984. There is a loan extension agreement which is similar to the extension agreements executed previously by Oral Strickland concerning the 1982 loan. This extension agreement contains ambiguity with respect to the loan number. The testimony indicates the 1982 loan was designated as Note No. 40154. The December 10 extension bears this number, but the designation is stricken and the number 50274 is written just above. The record reflects the number 50274 refers to the unsecured commercial note which was also executed by Oral Strickland on December 10, 1984. In explaining this situation, the bank

officer testified he was not sure of the extent of the bank's security for the 1982 loan when he and Strickland discussed a further extension in December 1984. Under that circumstance he had Strickland execute the unsecured commercial note pending a title check on the property. When he found he still had security in the property he had Strickland execute the loan extension agreement. The bank officer testified no funds were passed under the commercial note and it was simply held in his file. The record does indicate documentary stamps were placed on the commercial note and it was apparently picked up on the computer records of the bank because the computer printout used by Pee Dee to establish the amount of the debt referred to number 50274. The bank officer testified this was a keypunch error. The trial court felt the commercial note was a conditional agreement. Supporting this conclusion was a letter from the bank officer dated December 10, 1984 asking a local attorney for a title search on the property.

A novation is defined as a mutual agreement between all concerned parties for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor. There must be an intention to create a novation and the party asserting the novation bears the burden of proof. *Superior Automobile Ins. Co. v. Maners*, 261 S. C. 257, 199 S. E. (2d) 719 (1973). Accord and satisfaction is a two part doctrine consisting of an agreement between parties to settle a dispute and the payment of the consideration in the accord. *Mercury Marine Div. of Brunswick Corp. v. Costas*, 288 S. C. 383, 342 S. E. (2d) 632 (Ct. App. 1986). Based upon our review of the record we believe the trial court was correct in its assessment that the transactions of December 10, 1984, did not constitute a novation or an accord and satisfaction. As to novation, we do not find evidence of a mutual agreement to discharge the existing obligation. As to accord and satisfaction, we fail to see where there was a dispute between Strickland and Pee Dee or where there was any payment of consideration to settle a dispute. There was no dispute that Strickland owed money to the bank.

Tina Strickland has made the additional argument that the execution of the loan extensions by Oral Strickland

releases her from liability under the 1982 note because the extensions were obtained without her consent. She specifically argues the last two extensions were obtained after her divorce and Pee Dee had record notice Oral Strickland had been ordered by the Family Court to assume all obligations to Pee Dee.

The 1982 note executed by Oral and Tina Strickland indicated they were jointly and severally liable for payment. The note provided that "[a]ll persons bound on this obligation ... agree to be bound notwithstanding any extension of time which may be granted the undersigned; where more than one signature appears, shall [*sic*] be considered the joint and several obligations of each signer hereof." Under this language and as a co-maker, Tina Strickland is bound on the obligation. *Barr v. Witsell*, 173 S. C. 199, 175 S. E. 436 (1934) (acceptance of renewal of note from two of three co-makers did not release third co-maker from liability on the note).

We do not agree with Tina Strickland's argument that the family court order released her from liability under the note. The family court ordered Oral Strickland to be responsible for the debt, but it had no authority to discharge her from the note with the bank. We agree with the trial court that Tina Strickland may have recourse against Oral Strickland if she is required to pay any sum as a deficiency after the sale of the condominium.

At oral argument, counsel for Tina Strickland stated she was an accommodation maker of the 1982 note as opposed to a co-maker. *See S. C. Code Ann.* Section 36-3-415 (1976). We do not perceive where this argument was raised and decided by the trial court. *Rental Uniform Service v. K & M Tool and Die, Inc.*, 292 S. C. 571, 357 S. E. (2d) 722 (Ct. App. 1987) (as a general rule, the Court of Appeals will not address a question not raised in and passed upon by the trial court). In any event, the record does not support the claim of accommodation maker. The face of the note does not alert a reader to accommodation status. Also, the record does not demonstrate that Tina Strickland did not share in the proceeds of the 1982 loan. J. White and A. Summers, *Uniform Commercial Code* Section 13-13 (1972).

## IV.

Both Iniversal Mortgage Company and Larry Prosser argue they may assert the doctrine of equitable subrogation to obtain priority over the mortgage of Pee Dee. The Pee Dee mortgage was dated February 10, 1982. Prosser was deeded the condominium on April 29, 1983. On that day, he obtained a loan from and gave a mortgage on the condominium to Universal Mortgage Company. The equitable subrogation argument is based upon the assertion that the proceeds from the 1983 loan to Prosser were utilized to pay off the 1981 mortgage to Mutual Savings and Loan. The Mutual loan was satisfied on May 6, 1983. Universal did not take an assignment of the Mutual Savings mortgage.

Universal relies upon the cases of *Enterprise Bank v. Federal Land Bank of Columbia,* 139 S. C. 397, 138 S. E. 146 (1927) and *Meaders Bros. v. Skelton,* 234 S. C. 134, 107 S. E. (2d) 1 (1959). Under these authorities, Universal claims it is subrogated to the position held by Mutual Savings and Loan Association and to the position held by the City and County of Florence because of the payoff of the Mutual mortgage and taxes from the proceeds of the Universal loan. Universal asserts Pee Dee had a mortgage junior to the Mutual mortgage and should not be entitled to claim the benefit of elevated priority when Pee Dee did nothing to obtain the rise in priority.

> Under *Enterprise Bank* and *Meaders* the elements of the doctrine of equitable subrogation are defined as follows:

(1) the party claiming subrogation has paid the debt,
(2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien,
(3) the party was secondarily liable for the debt or for the discharge of the lien, and
(4) no injustice will be done to the other party by the allowance of the equity.

The trial court denied Universal's claim by finding Pee Dee's mortgage was on record at all pertinent times and therefore everyone had notice of the mortgage. The court speaks in terms of constructive notice and made no finding on actual notice. The court also observed Universal neither asked for

an assumption of Mutual's mortgage nor did it assert that it paid off the Mutual mortgage intending to take Mutual's position. No testimony was presented by Universal. It relied upon the settlement statement and escrow card to demonstrate the disbursement of funds. The mortgage from Prosser to Universal was also introduced.

It is uncontested that proceeds from the Universal loan paid off the Mutual mortgage and taxes. The record indicates the deeds and mortgages relating to this property were recorded. The settlement statement from the Universal loan demonstrates that a title examination was performed but the record is silent as to the results of the examination.

A review of the *Enterprise Bank* and *Meaders* cases indicates this case falls within their authority. It is reasonable to infer Universal loaned money to Prosser to satisfy the Mutual mortgage. It is also reasonable to infer Universal intended to acquire a first mortgage on the property. The mortgage from Prosser to Universal states the mortgagor (i.e. Prosser) covenants that the property is free and clear of all liens and encumbrances.

In considering this doctrine, it is important to note the effect of actual or constructive notice of a prior recorded mortgage. As we read *Enterprise Bank,* a party in the position of Universal may assert the doctrine of equitable subrogation so long as the party has no actual notice of a prior mortgage such as the Pee Dee mortgage. Constructive notice is not a bar. *Enterprise Bank* contains language that a party who has paid a prior lien at the request of the debtor in ignorance of a subsequent encumbrance may be entitled to the remedy of subrogation notwithstanding a failure to examine the records. 139 S. C. at 407, 138 S. E. at 149. Although this record contains some evidence a title examination was performed pursuant to the Prosser-Universal loan, there is no evidence of the results of the examination. Absent proof in the record, there is no basis to conclude Universal had actual notice of the Pee Dee mortgage.

As to the other elements of equitable subrogation, the *Enterprise Bank* case addresses those matters. Universal was not a volunteer because it had a legal obligation to pay off the Mutual mortgage upon the execution of the Prosser

mortgage. According to *Enterprise Bank*, this same reasoning made Universal secondarily liable for the Mutual mortgage. 139 S. C. at 404, 138 S. E. at 149. Finally, there is no evidence of injustice to Pee Dee because it clearly had a junior mortgage to Mutual and there is no evidence it undertook any action to improve its priority position. *See Meaders Bros. v. Skelton*, 234 S. C. at 137, 107 S. E. (2d) at 2 (third mortgagee subrogated to the position of first mortgagee to the extent of payment of the first mortgage.)

Pee Dee has raised a separate issue regarding an allegation of actual notice by Universal of the Pee Dee mortgage. To support the claim of actual knowledge Pee Dee argues the same attorney who handled the closing of the Universal loan had previously prepared title searches on this property for Pee Dee. Pee Dee asserts the attorney was acting as the agent of Universal in the closing of the loan and his prior knowledge of the Pee Dee mortgage is imputed to Universal. As previously stated, the appellate record is silent with respect to actual notice by Universal other than the inference raised by Pee Dee. There is no evidence in the record of any information the closing attorney may have learned while representing Universal.

As a general rule, a principal is charged with the knowledge an agent acquired before the relationship only when the knowledge can reasonably be said to have been in the mind of the agent while acting for the principal or where he acquired it so recently as to raise the presumption he still retained it in his mind. *Aiken Petroleum Co. v. National Petroleum Underwriters*, 207 S. C. 236, 36 S. E. (2d) 380 (1945); *McSweeney v. Prudential Ins. Co. of America*, 128 F. (2d) 660 (4th Cir. 1942), *cert. den.*, *McSweeney v. Prudential Ins. Co. of America*, 317 U. S. 658, 63 S. Ct. 57, 87 L. Ed. 529 (1942). No testimony was offered to establish the state of mind of the attorney. The title searches performed by the attorney took place over a year before the transaction between Prosser and Universal. Under this record, we decline to find actual notice.

While we find Universal is entitled to assert the doctrine of equitable subrogation, Prosser is not. Prosser was primarily liable on the 1981 mortgage to Mutual Savings. He had a duty to satisfy the Mutual mortgage. A

mortgagor who pays off a prior mortgage may not keep it alive against later mortgagees either by taking an assignment or by asking for subrogation. G. Oxborne, *Mortgages* Section 282 (2d ed. 1970); *See, Dunn v. Chapman,* 149 S. C. 163, 146 S. E. 818 (1929).

## V.

For the reasons set forth, we find Pee Dee State Bank has a valid mortgage on the condominium. No novation or accord and satisfaction was proved. Tina Strickland was not released from the 1982 note and mortgage although she has a right to proceed against Oral Strickland for any amount she might be required to pay to Pee Dee. Universal Mortgage Company is entitled to application of the doctrine of equitable subrogation. Larry Prosser may not assert the doctrine.

The decision of the court is affirmed in part, reversed in part, and remanded for determination of the interests of the parties in accordance with this opinion.

Affirmed in part, reversed in part and remanded.

SHAW and GOOLSBY, JJ., concur.