2301

DODGE CITY OF SPARTANBURG, INC., Appellant v. Howard C. JONES and Deborah Ann Jones, Defendants and Carolina Investors, Inc., Respondent.

(454 S.E. (2d) 918)

Court of Appeals

492

*Judson K. Chapin, III*, of *Gaines, Walsh, & Chapin*, and *William S. Bean*, of *Bean & Bean*, Spartanburg, *for appellant*.

*Melissa A. Jones*, of *Adams, Quackenbush, Herring & Stuart*, Columbia, *for respondent*.

Heard Oct. 4, 1994.

Decided Feb. 13, 1995.

Reh. Den. March 22, 1995.

SHAW, Judge:

Dodge City of Spartanburg, Inc. (Dodge City) appeals from the trial court's order giving priority over Dodge City's judgment to a subsequent mortgage held by Carolina Investors, Inc. (Carolina). We affirm.

I.

On August 7, 1984, Howard C. and Debbie Ann Jones (the Mortgagors) purchased certain property in Spartanburg County and executed a first mortgage in the amount of $14,360.72 in favor of First Federal Savings and Loan Association (the First Mortgage). The First Mortgage was recorded the same day. On November 6, 1986, the Mortgagors executed a second mortgage in the amount of $13,863.36 (the Second Mortgage) in favor of Carolina. The Second Mortgage was recorded on November 18, 1986. On April 7, 1988, a default judgment in the amount of $5,790.71 (the Judgment) was en-

tered against the Mortgagors in favor of Dodge City, which Judgment became a lien against the property owned by the Mortgagors.

On March 13, 1989, the Mortgagors executed another mortgage in favor of Carolina in the principal amount of $19,274.15 (the Carolina Mortgage), which mortgage was recorded on March 24, 1989. As provided in the disclosure statement given to the Mortgagors, proceeds from the Carolina Mortgage included $7,854.13 to pay off the First Mortgage, and $6,241.38 to pay off the Second Mortgage. The First Mortgage and Second Mortgage were paid and satisfied of record. The person who performed the title search for Carolina failed to discover the Judgment, although the Judgment was properly recorded at the time of the search.

In February 1993, Dodge City sought to enforce the Judgment and moved for a sale of the property. Notice of the sale was given to Carolina. After a motion by Carolina, a consent order was issued staying the sale until the relative priorities of the Carolina Mortgage and the Judgment could be determined. By order dated July 9, 1993, the court held that Carolina was equitably subrogated to the priorities of the First Mortgage and the Second Mortgage. The court held that Carolina was subrogated only "to the extent of the percentage resulting from the ratio of the balance of the first and second mortgages paid and the March 13, 1989 mortgage between [Carolina] and the [Mortgagors] together with attorneys' fees and costs."

Upon motion by Dodge City, the court issued an order clarifying the extent to which the Carolina Mortgage had priority over the Judgment and the effect on the amount subrogated of subsequent payments on the Carolina Mortgage. As to the extent of the subrogation, the court held that as of June 25, 1993, the date of the original hearing, Carolina was equitably subrogated to the rights and priorities of the First and Second Mortgage in the amount of $11,437.63. The court reached this amount by calculating the ratio of the amount of the proceeds used to satisfy the First Mortgage and the Second Mortgage to the total amount of the Carolina Mortgage plus costs. The principal amount of the Carolina Mortgage was $19,274.15, of which $14,095.51 was used to satisfy the First Mortgage and the Second Mortgage, yielding a ratio of seventy-three per-

cent. Carolina was therefore equitably subrogated in an amount equal to 73% of the outstanding amount of the Carolina Mortgage, plus attorneys' fees and costs. As of June 25, 1993, the amount outstanding on the Carolina Mortgage was $14,355.08, and attorneys' fees and costs equalled an additional $1,312.90. The court therefore held that the Carolina Mortgage had priority over the Judgment only to the extent of $11,437.63 [($14,355.08 + $1,312.90) x73%]. The court further held that seventy-three percent of the payments on the Carolina Mortgage made after June 25, 1993 would be applied to reduce the subrogated amount.

On appeal, Dodge City argues alternatively that Carolina is not entitled to equitable subrogation; or, if equitable subrogation is appropriate, it is appropriate only as to the First Mortgage. Dodge City also contends that Carolina's attorneys' fees and costs should not be included in the amount subrogated and should not have priority over the Judgment, and that the full amount of payments made on the Carolina Mortgage should reduce the amount subrogated.

## II.

Through the doctrine of equitable subrogatio, a subsequent creditor can assume the rights and priority of a prior creditor. A party may be equitably subrogated to the rights of an earlier creditor if: (1) the party claiming subrogation has paid the debt owed to the earlier creditor; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. *Dedes v. Strickland*, 307 S.C. 155, 414 S.E. (2d) 134 (1992); *Pee Dee State Bank v. Prosser*, 295 S.C. 229, 367 S.E. (2d) 708 (Ct.App.1988), *overruled in part on other grounds*, *United Carolina Bank v. Caroprop, Ltd.*, 316 S.C. 1, 446 S.E. (2d) 415 (1994). The party claiming subrogation must not have actual knowledge of any intervening lien creditors. *Strickland*, 414 S.E. (2d) at 136.

As to the First Mortgage, our analysis in *Pee Dee*, *supra*, makes clear that equitable subrogation was appropriate. In *Pee Dee*, Universal loaned money to the mortgagor. A portion of the loan proceeds was earmarked for

the satisfaction of the first mortgage. Universal had no actual knowledge of an intervening mortgage. Under these facts, this Court held that Universal was subrogated to the position of the first mortgagee. 367 S.E.(2d) at 713. This Court held that, because a portion of the loan proceeds were earmarked to satisfy the first mortgage and because the Universal mortgage recited it was to be a first mortgage, Universal had a legal obligation to satisfy the first mortgage and was not a volunteer. For this same reason, Universal was secondarily liable on the first mortgage. Moreover, subrogating Universal to the position of the first mortgage caused no injustice to the intervening mortgagee, because it was a second mortgage before and after the subrogation. *Id.* at 712-13. Here, just as in *Pee Dee*, Carolina, a subsequent mortgagee with no actual knowledge[1] of an intevening lien, loaned money to the mortgagors, a portion of which money was to be used to satisfy the First Mortgage. No injustice is worked upon Dodge City because it is in essentially the same position as it was at the time the Judgment was filed. *See United Carolina Bank v. Coroprop Ltd.*, 316 S.C. 1, 446 S.E. (2d) 415 (1994) (no injustice when intervening mortgagee had same priority before and after subrogation). Therefore, Carolina is equitably subrogated to the First Mortgage.

The Second Mortgage, however, merits separate treatment because the Second Mortgage was held by Carolina itself. The disclosure statement provided that a portion of the Carolina Mortgage loan proceeds were to be used to satisfy the First Mortgage and the Second Mortgage. In *Pee Dee*, a settlement statement indicated that a portion of Universal's loan was used to satisfy the existing mortgage. *Pee Dee*, 367 S.E. (2d) at 710. On these facts, we held that Universal was legally obligated to satisfy the mortgage, and was therefore secondarily liable on the mortgage. *Id.* Likewise, Carolina was legally obligated to satisfy the Second Mortgage as stated on its disclosure statement. If Carolina had not satisfied the mortgage, the

---

[1] Only actual knowledge of an intervening creditor will defeat a claim for equitable subrogation. *Enterprise Bank v. Federal Land Bank of Columbia*, 139 S.C. 397, 138 S.E. 146, 148-50 (1927); *Pee Dee*, 367 S.E. (2d) at 713. While the proper recording of the Judgment gave Carolina constructive knowledge, there is no evidence that it had actual knowledge of the Judgment. Carolina's contructive knowledge does not defeat its claim. *Pee Dee*, 367 S.E. (2d) at 713.

Mortgagors would have had recourse against Carolina. Thus, while Caroina was not liable on the Second Mortgage in the sense that it could somehow sue itself had the mortgage not been paid, Carolina was obligated to the Mortgagors for the saisfaction of the Second Mortgage. Carolina is therefore subrogated in the Second Mortgage as well as the First Mortgage.

## III.

Dodge City also argues the trial court erred in including attorneys' fees and costs in the amount to which the Judgment is subrogated. In *Meaders Brothers v. Skelton*, 234 S.C. 134, 107 S.E. (2d) 1 (1959), attorneys' fees were included when determining the amount subrogated. *Id.* 107 S.E. (2d) at 2-3. Here, the Carolina Mortgage provides that the Mortgagors shall pay attorneys fees and costs if legal proceedings are instituted in connection with the mortgage. The Court, therefore, did not err by including attorneys' fees in the amount subrogated amount.

## IV.

Finally, Dodge City challenges the trial court's determination that the amount subrogated shall be reduced by seventy-three percent of the payments made after the date of the hearing. The trial court properly held that Carolina was subrogated to that percentage of the outstanding balance of the Carolina Mortgage as the percentage which the amount of the loan proceeds used to satisfy the First Mortgage and the Second Mortgage represented of the total loan proceeds. *See Meaders*, 107 S.E. (2d) at 2-3. The court therefore held the subrogated amount equalled seventy-three percent of the outstanding balance of the Carolina Mortgage at the time of the hearing. Reducing the subrogated amount by seventy-three percent of each payment made yeilds the same result as recalculating the amount subrogated at the time the Judgment is actually foreclosed. We find no error in the trial court's calculations.

Accordingly, the order of the trial court is Affirmed.

HOWELL, C.J., concurs.

HOWARD, Acting Judge, concurs in separate opinion.

HOWARD, Acting Judge, concurring in result:

I agree with the majority that Carolina is entitled to be subrogated to the priority of the First and Second Mortgages. The analysis of the case and the result reached by the majority is completely consistent with and in fact compelled by our previous decisions in this area, particularly *Caroprop* and *Pee Dee*. I write separately, however, because I believe we should distinguish between subrogation claims raised by a party paying a debt for which he was secondarily liable, as in *Caroprop*, and those raised by a party who advanced funds to the debtor to satisfy a preexisting debt.

As noted by the majority, a party may be equitably subrogated to the rights of an earlier creditor if: (1) the party claiming subrogation has paid the debt owed to the earlier creditor; (2) the party was not a volunteer but had a direct interest in the discharge of the debt or lien; (3) the party was secondarily liable for the debt or for the discharge of the lien; and (4) no injustice will be done to the other party by the allowance of the equity. *Dedes v. Strickland*, 307 S.C. 155, 414 S.E. (2d) 134 (1992). This was the situation in Caroprop, where the subrogated party was secondarily liable for the debt. It is logical in that instance to conclude the paying party was not a "volunteer", and application of the four part test yielded the desired result.

However, it is generally recognized that subrogation may also be proper, if the party seeking subrogation did not discharge the debt himself, but instead advanced the funds to the debtor with the understanding that the debtor would discharge the debt. *See* 83 C.J.S. *Subrogation* § 38 (1953). Subrogation is proper in such a case if the circumstances establish that it was the intention of the party advancing the funds that the advance was to have security of equal dignity and priority as that of the debt discharged. 73 Am. Jur. (2d) *Subrogation* § 92 (1974).

In this case the disclosure statement clearly indicated that the Carolina Mortgage was to be a first mortgage on the property. Thus, it is clear that the Mortgagors and Carolina intended the Carolina Mortgage to have the same priority as the debts to be discharged by the Mortgagors. Dodge City has suffered no injustice because its Judgment has the same priority as when it attached to the Mortgagor's property. However,

because our courts have yet to distinguich between the subrogation rights of a party discharging a debt and those of a party *advancing* funds to the debtor so that the debtor may discharge the debt, the majority forced the circumstances of the case to fit the elements applicable to a wholly different category of subrogation. The result is as awkward here as it was in *Pee Dee*. The court is forced to say that Carolina discharged the First and Second Mortgages, when clearly the Mortgagors (through the proceeds advanced by Carolina) in fact discharged those debts. The court must also find that Carolina had a direct interest in discharging the debt, and that Carolina was secondarily liable on the debt. To do this the court concludes the disclosure statement created an obligation on the part of Carolina with regard to the mortgages. The disclosure statement, however, at most imposes obligations on the Mortgagors, not Carolina, to satisfy the First and Second Mortgages. While the disclosure statement may describe Carolina's obligation to the Mortgagors to disburse the loan proceeds as described on the statement, this obligation cannot legally be equated with an undertaking by Carolina, enforceable by the First and Second Mortgagees, to pay off the mortgages. Nor can the disclosure statement be read as leagally creating any such obligation. In any event, prior to entering into the loan contract, Carolina had no obligation to do anything regarding satisfaction of the debts. Thus, under any stretch of the imagination, they were purely volunteers.

As unwieldy as the majority approach is, it is mandated by our previous decisions. In my view, a different analysis is required when the party seeking subrogation has advanced the money to the debtor to discharge the debts, and the proper result can be reached without struggling to reconcile inapplicable factors. I therefore concur in result only.